Our first case is today. I'm actually going to make a motion of the court, so I pass the presiding judge position over to Judge O'Malley. I'd like my law clerk, Ethan, to stand up please. I move the admission of Ethan Y. Park, who is a member of the Bar and is in good standing with the highest court of California. I have knowledge of his credentials and am satisfied he possesses the necessary qualifications. So Ethan has been my clerk now for close to a year, and it's been a complete joy to have him work for me. He has a very strong background in the field before this court, and he's just been a joy to have in chambers. I've never met somebody that will go down every rabbit hole that could possibly be gone down the level of depth that Ethan does, which is going to make him really a valuable contribution to our Bar, because I have no doubt that when he gives us briefs, they will be thorough and very well thought through. So I am happy to request that my colleagues consider voting his admission to our court. Judge Hughes, do we need to deliberate? No. We'll grant the motion. Welcome, Ethan. Okay, so please turn. And if you would raise your right hand, can you solemnly affirm that you will comport yourself as a attorney in the counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Welcome to the United States Court of Appeals. Thank you. Okay. Now I'll call our first case for the day, 2014-1734, M. Blaze v. Apple. Is it Pavane? Mr. Pavane, please proceed. Thank you, Your Honors. Good morning. I'm Martin Pavane. I'm counsel for the plaintiff appellants here. With me at counsel table is Darren Mogul, another attorney in my firm. This is an appeal from a jury verdict in which the jury entered a verdict of no direct infringement. We submit that on the undisputed evidence, no reasonable jury could have reached that verdict. If Your Honors agree with us on that point, we also ask that you enter a judgment as a matter of law finding that Apple induced, because we believe on the undisputed evidence that Apple was shown to have induced infringement by the direct infringers. The jury did not reach the question of induced infringement, having found there was no direct infringement. In the alternative, we would ask for a new trial because we believe that the evidence is against the – the finding is against the great weight of the evidence or a seriously erroneous result was reached. Is your argument on appeal – there's a claim term real-time broadcasting. Is your argument that the district court erred in its construction or that the jury didn't have substantial evidence upon which it could base a non-infringement verdict? The latter, Your Honor, and I'll go right to that if you'd like. On the real-time broadcasting, there were three limitations that Apple argued at trial that were not met by the direct infringers, one of which is real-time broadcasting. That's the only one that the district court reached. The district court found that the jury reasonably could have reached that and did not get into the question of whether the other limitations had been met. On real broadcasting – But that doesn't limit us. I mean, obviously, if any one of them hasn't been met or we conclude that there was substantial evidence to support the conclusion that any one of them hasn't been met, then we would have to affirm, correct? Correct. Absolutely correct. So on real-time broadcasting, Apple made two arguments. First, it argued that the construction of the court required simultaneous reception at all of the client devices, such as the handheld phones, iPads, et cetera, computers, that the broadcast that was coming out from the transmitting computer had to get to all of these devices at the same time. Is that really what it argued, or did it argue that they had to be simultaneously transmitted to all those devices at the same time? They argued that simultaneous transmission requires that it be received at all of them at the same time. There was no question here. The claim is directed to the upload end of the system. And then it goes on to say, such that one or more client devices can download that stream. There is no question and nobody disputes that the transmission, the creation of the stream, and the upload to the HTTP server is simultaneous. That's the whole point of the system. That's the whole point of the invention is to send out one stream and then anybody can download it as they please. So they argued, and they put up three different devices and showed that they were all getting them at slightly different times, and therefore there was no simultaneous reception. That's not part of the claim. That's not a basis for finding no infringement. The second argument they made was the latency argument, and that's the one that the judge adopted. And he said, well, the time from transmission, from when you create the stream, the live action on the field, a baseball game, the live action, and when the person is actually viewing it on the client device is from 15 to 30 seconds, and a reasonable jury could have found that that latency, as it's called, is too long to justify real-time broadcasting, as he construed the term. Now, put aside that there's no real mention of latency in the claim. The evidence showed, and the undisputed evidence showed, and this is on our reply brief, that that delay, that 15 to 30 second delay, occurs inside the client devices. So what happens is they start downloading the streams. I think you've read these papers. You'll understand the stream is divided into time segments, five seconds a slice or ten seconds a slice. When it gets into the client device, it's buffered. Why do they buffer it? Why do they store up a number of frames, slices, before they start showing it? So it won't stall. They want to make sure they have enough data to start showing the baseball game. So if they buffer three five-second slices, that's 15 seconds. It's happening inside the device. If they buffer three ten-second slices, it's 30 seconds. So the evidence showed that the delay was inside the client device. It has nothing to do with the claim or the transmission. Well, you say the evidence shows that, but I thought that there were Apple employees that testified that the HLS developers made a, quote, deliberate choice to include a delay in transmission. And so if that evidence is before the jury, why doesn't that support the jury's factoring? Because that evidence, Your Honor, is the evidence, the only evidence of this delay that they built into the system. Don't forget, Apple builds the devices. They don't build the front-end system. They have nothing to do with that. That's implemented by Major League Baseball or whoever it is who's showing the live event. The built-in delay is in the devices. That's the buffering that I talked about, and the only evidence about that delay was the buffering. So that would not have, should not have been a basis. No reasonable jury could have found that that vitiates the real-time broadcasting limitation of the claim. But backing up to the issue of latency, you actually proposed a claim construction that would have built some latency into it, correct? We said that it has to get there without substantial delay. Right. Get there without substantial delay. Right, and then Apple argued with minimal delay. Right, and it's in the patent. The patent says it preferably gets there without substantial delay. That's what it says. Let's remember— When you say get there, it doesn't—I mean, the claim doesn't say get to the device. It's to the client who's going to be watching it, right? Well, the client is watching it on a client device. I refer to that as the client device, like your handheld phone or your iPad or your computer. That's the device. That's what it goes to. That's what it's transmitted to. Okay, so now you're building something else into the claim that you never asked the court to build into the claim, which is that transmission has to include simply receiving it on a device but not watching it. No, I'm not asking you to build that in. I'm asking you to read the claim the way it was construed. That's not what the claim construction said. You're arguing a different construction now than what was before the district court. I mean it was simultaneous transmission of data to one or more clients matching the human perception of time. I mean that to me sounds like the person receiving this is receiving it in real time, not the device. Who cares what the device is doing? This says matching human perception of time. But there's nothing in the claim that talks about what happens in the device. The claim is devoid of the device. I understand that. That's why I think you're proposing a new claim construction to us today that is not this claim construction, and you didn't appeal this claim construction. So why, if we're talking about the client person rather than the client device, is not the 15 to 30 second latency not real time? Because, again, I don't believe that even under the court's claim construction there's anything in there that talks about what happens in the client device. Again, the claim simply says – Well, let me – because I just don't think that matches up with what this claim construction is. Let's just assume that the latency is with the viewer, not the device. Why isn't 15 to 30 second latency not real time? Why is it not real time? Well, I believe that even 15 to 30 seconds latency, frankly, is real time. I don't see how a delay of that short a period of time from when an action is happening on the field – How do we decide that? I mean you would agree, I think, that a 10 minute delay is not real time, right? I could agree. I agree there's some point in there at which it's going to become certainly not real time. Is a five minute delay not real time? Your Honor, that's not – those facts were not before the court. What about one minute? One minute I would probably say is real time because you have to – don't forget the claim – I mean even if you're watching these things, I don't know if you watch any of these things, but a lot of times you're watching things on your devices and you want to get it quickly enough to beat some text from some other service you signed up to. Somebody just scored a grand slam. So one minute to me is not particularly close to real time because I'm going to get a text from ESPN that somebody just hit a grand slam before I see it on the screen. Your Honor, also bear in mind that the claim specifically says that this transmission occurs over a network. When you go over a network, again, we don't control the network. Apple doesn't control the network. Nobody controls the network. There's always going to be some inherent delay in that. And the claim – the patent itself specifically talks about that preferably it gets there with minimal what it calls lag. It recognizes that there's going to be some delay in there. And I don't believe that any reasonable jury – even if you believe, if you conclude that the court's claim construction takes into account what happens inside the client device, I don't see how that type of delay of 15 to 30 seconds is something that would not be viewed as real time under anybody's reasonable interpretation. But if that's a factual question, don't we have to defer to the jury's view of that? Not if you don't agree that 15 to 30 seconds is not real – is real time. But – okay, wait. But again, I'm not – that's not my position. Maybe not if we don't agree. That's not the standard. It's is there substantial evidence to support the jury verdict. So if I don't – if I think 15 to 30 seconds is still real time, it's not the question. The question is, is there any reasonable basis upon which the jury could have reached that conclusion? And, look, I realize this is in the context of streaming, but we've got other cases that had to deal with the claim term real time. And for example, if you were talking about – what is the communication technology? Video conferencing. Yeah, video conferencing, right? FaceTime or – what is the older one that used to drive me crazy and we never used to use? Because I would say – somebody would say something, and I could see their mouth moving, but I wouldn't hear the words. Skype. Skype, yeah, right. That's the one. I hated Skype because it was – the mouth moving didn't line up with the words coming across, and there was this time lag delay. You know, that – real time makes a big difference in this technology in lots and lots of cases. Now, maybe not quite as much in broadcasting like this, but in this technology, you see the use of this term lots. And a 15-second or 30-second delay in Skype is enough that makes it completely unusable. So that would never be real time in that context. But you're saying that the words real time could be context-specific in a way that in broadcasting could make it real time, 15- to 30-second delay? Well, I certainly believe that in the case of a baseball game, anybody who's watching it, I think, would conclude that 15- or 30-second delay is still real time. But again, that's not my main argument. I don't think a reasonable jury should have reached that conclusion. My main argument remains that I don't believe there's anything in the court's claim construction, Your Honor, or in anything in the patent that talks about what's going on inside the client device. The claim is – the patent is silent on that. That's not part of the invention. The invention is to get the broadcast stream out there simultaneously. What is the point of having that phrase matching the human perception of time in the claim construction if it isn't referring to the human's viewing of the transmission rather than the client device's receipt of the transmission? Well, I think you have to read it in the sense of the term broadcasting. The broadcasting is the transmission. Again, if you read the elements of that claim, there's nothing in that claim that gets inside that client device. All it simply says is such that they can download it. The whole claim is directed to the front end of the system, getting it up to that HTTP server, broadcasting it out to that which is unquestionably simultaneous, and then the clients can download it as they see fit. And I'm not arguing that the construction was wrong. I think the judge was referring there clearly to the real time of the broadcasting, the broadcast. That's what he was construing. The broadcast is not the reception. The reception is a different step, not covered by our patent. We don't build those devices. You say that's what he was construing. Well, wouldn't his decision to allow the jury verdict on real time to stand, fly in the face of the idea that that's – if he really read this claim the way you're saying it is to be read, if his claim construction really was narrowly limited to the transmission and not the receipt, then wouldn't he have gone your way on JML on this real time question? I don't think he – he didn't address it all in his decision. I don't know what he was thinking because he didn't address in his decision the issue of what goes on inside the devices at all and whether that's a distinction to be made. So I don't know what he was thinking. I agree that his decision suggests that he may have thought otherwise. I do not dispute that. But I think it's clear from the claim and his own construction that that's incorrect. Okay. Do you want to save the remainder of your time for rebuttal? Sure. Thank you. Mr. Alcock. Yes. Good morning. May it please the court, counsel, I'm here privileged to represent Apple. There are a number of grounds to support the verdict. I'd like to ask you a procedural question at the outset. You have what I think is framed as a conditional cross-appeal related to validity. Is it your view – just want to be very clear – that if we were to affirm on non-infringement that we would have no need to reach the issues of validity? Absolutely correct. Absolutely correct. So there are many grounds to support the verdict. I'm going to focus on what I would say are the three substantial evidence grounds. The first one is the one that has been being discussed, the real-time substantial evidence question. That's the one that the judge, the trial court, discussed in the JAMOL. And then I'm going to talk about how the evidence, substantial evidence, supports the implied finding that the predetermined data size limitation is likewise not met. And last, the substantial evidence that supports the implied finding that the uploading of the sequence is not met. Let's do the first one because that's where we focused with your friend on the other side. His argument is that what we're talking about here is the transmission of data, not necessarily the receipt of it, so that if it is transmitted in real time, just because the person holding the device doesn't get to see it until a delay of 15 or 30 seconds goes on, that that doesn't change the fact that it's transmitted in real time. Well, that's not what the claim construction says. That's not what the arguments were at the claim construction. That's not what was argued to the jury, and that's not what the evidence was all about. Well, the claim construction does say simultaneous transmission of data to one or more clients matching the human perception of time. So are we assuming that the clients have to be the person doing the watching while they're watching, or could the clients be the client devices? I believe the real-time broadcasting portion of the limitation requires one to analyze whether or not the transmission is in real time, that is, matching the human perception of time. I got that, but the question is, does the transmission – his argument would be that it is transmitted in real time, it's just that your device builds in a delay. And so that doesn't mean it's not transmitted in real time, it just means it's not viewed in real time. Well, first of all, the record evidence is that not on the transmission side that it was transmitted in real time. The record evidence is that there was up to a 42-second delay, and the only evidence of that that occurred in the client was 15 seconds. So there was evidence of a substantial amount of delay outside of the client. However, on the point that Your Honor is addressing, the issue is whether or not the client viewing was in real time, and that's what the real-time broadcasting limitation requires. And that's where the minimal delay that we proposed as the claim construction, or no substantial delay that they proposed with the claim construction, is measured from. And the court came up with its own construction using the human perception of time or at the same rate as the external event. What is the external event? The external event is the event that is being broadcast. What human is involved in this process? The human is the one watching that external event. So clearly the claim construction appropriately focuses on what is the nature of the human viewing of the experience, and that's what real-time broadcasting, that's what the term means. Do you think that claim construction actually did away with any possibility of latency? No, I think that claim construction – no one argued that. And the judge, as he says in his JMOL in the claim construction order, didn't say that he was doing away with latency. Both sides argued that some latency was permitted under the patent. We had a slightly different way of describing it. The court then adopted another suggestion, his own, that was intended to capture the amount or allow the jury to decide how much latency was inherent in the system and whether or not that amount of latency allowed it to satisfy the real-time broadcasting. And the patent specifications that the court referred to when he was coming up with his construction referred to the transmission throughout the whole system, not only from the transmitting computer but from the server to the client devices, and obviously how that perception, the human perception, matched the external event. So there was really no question that the court's claim construction intended to measure the broadcast by the human perceiving the event. Did I answer your question, Your Honor? Yeah, but I guess I'm still – it still seems to me that if you talk about human perception of time, it seems that you're essentially doing away with any concept of latency. But you're saying that at trial, both parties argued to the jury that some latency was allowed. Right, and the question was how much is too much. But you're right, Your Honor. I believe the court's construction was stricter, I would say, in terms of how much latency would have been permissible than either of the parties' constructions. Well, I suppose it could be latency that is measurable but imperceptible to human perception. Correct. Milliseconds, which is actually when some of the Apple witnesses were asked to testify on this topic, and they were comparing FaceTime, which is a real-time system, with this system. They said that they defined latency in terms of microseconds because it did not match the human perception of time. It was imperceptible. What in the specification supports the idea that the real-time broadcasting is all about receipt by the client as opposed to transmission by the broadcaster? So what is it? Point to me your best specification evidence for the idea that this claim ought to be construed as focused on client's receipt as opposed to broadcaster's transmission when it's talking about real-time. Yes, there are two parts of the specification that refer to what the client would do in order to speed up the process so that it would receive the data from the server as fast as it could. That would be at column 8 lines 1 through 7. The quote is, when the client connects to the server and starts to receive the data stream substantially in real-time, preferably only a minimal lag, as it is transmitted from computer 34. So what that means is the client... Time out, though. Why does this actually favor you as opposed to cutting against you? Because this expressly says when the client receives the data stream substantially in real-time. But the claim doesn't talk about receipt in real-time. The claim talks about broadcast in real-time. And transmission is the word that's expressly used in connection with the real-time. So why doesn't this actually cut against you in that this real-time modifier is clearly modifying the receiving of the data and the claim is expressly linking the real-time to the transmission of the data? Yeah, but it's transmission to the client. And so that means that the client is receiving the data. But this patent uses throughout it transmitted and received to mean two different things, don't it? Yes. Because it uses the word transmitted. It's got to be like 40 times. And I don't understand the word transmitted ever to be used as encapsulating receipt. And in fact, since it does use the word receiving the data and talk about receiving the data probably about 20 times, aren't those two distinct concepts as defined by this patent? Right. But the claim requires real-time broadcasting. And that needs to be measured somehow. And I was trying to answer the court's question with respect to – the court asked how does the patent describe the receipt as being important? And what that patent specification reference that I just mentioned shows is it is talking about altering the path not from the transmitting computer but from the server to the client device so as to allow the client device to receive the data quicker because it's opening up the transmission line. And then at column 10, lines 59 through 63, further preferably, the client compares the time stamped in the data stream to a local real-time clock. And if it determines there's a significant lag in the time codes relative to the real-time clock, opens additional links with server 36 in order to increase the overall data rate. So that has nothing to do with the transmitting computer. That has everything to do with the client device opening up additional lines from the server, which is separate from the original transmission. So there's more. On column 11, line 9 through 21, I think that also supports what you're saying. So your argument, if I understand it then, is that this district court's construction that real-time encapsulates the entire process from cradle to grave in terms of transmission to receipt is a reasonable construction and otherwise supported by the spec. Absolutely. And if you just think about it, it makes sense, right? I mean, if you had, under the construction that Emblaze is arguing, under the approach they're arguing, the thing could be delayed three hours at the server intentionally. Now, when you say it just makes sense, see, I think you lose me there just a tiny bit. It makes sense in terms of these claim terms, where it says real-time broadcasting from a transmitting computer to one or more client computers over a network. And so there, I think the words real-time are used to reference broadcasting, which is then further defined to be transmitting server receipt, right? Like, that's kind of the way this claim expressly calls it out. But if the term had simply been real-time broadcasting, and if broadcasting had been defined as transmission throughout these claims, then would it really be fair to import receipt in? Like, suppose that there was no question that all the transmission occurred at a single moment in time, simultaneously, and that every client was capable of receiving it simultaneously, but you all built a lag into your receiving devices that were irrelevant to the transmission. Wouldn't that be a different case if this claim term was limited to real-time transmission? Well, yeah, sure. You could rewrite the claim and not require real-time broadcasting measured in the way that the patent describes it. Yes, you could rewrite the claim, but that isn't what – So if the claim said real-time transmission in isolation as opposed to real-time broadcasting, which explains transmitted from – to a client, over a network, blah, blah, blah. Well, and assuming further the patent didn't have any of the other specification references that made clear that that's what they were talking about, yes. I mean, you could rewrite the claim, but that isn't the claim nor the specification nor the claim construction that we got. The lag in the Apple system that you say can be 15 to 30 seconds and you think that's separate from other lag, but the lag that's built into the system, where is that lag? In other words, once it's received, is it fully downloaded or it just can't be broadcast? What – where is that delay? So Apple – this is an inducement case against Apple, and so Apple instructs people to build systems, and their instruction has them to build delay into the system. So the record at trial was not fully developed on this issue. This – where the delay rose is raised first in their reply brief. I mean it wasn't argued at trial. It wasn't argued in their opening brief. It wasn't argued anywhere until we got their reply brief. So the record isn't fully developed, but what the Apple instructions are is to pick the third slice back as – in order to accommodate for stalls or switching in the system. So you'll get a smooth viewing of the thing. Each of the slices are – they could be set at different times. Typically in the systems at trial they were set five seconds. So that's where you get the 15 seconds. They pick three slices back so that – and then start playing so that you sort of have a 15-second hold and so that even if the system goes down, you've got 15 seconds for it to come back up, and you won't perceive any stall in it. Now the record isn't fully developed as to where the other 15 to 24 seconds or so could occur in the system because this was never an issue at trial. It wasn't argued to the jury. It wasn't argued to the judge in JMOL. But that's, I believe, the record on that point. Okay. So I didn't get to the other two arguments, but – We have them in your briefs. Yes, they're covered. Thank you, Mr. Alcott. I see my time is over. Thanks. Mr. Pothain. Thank you very much, Your Honors. I just want to make a few quick points there. Firstly, this very issue, of course, was argued at the trial. It was one of the bases upon which they argued there was no infringement to the jury. Let me just read you from – quote it in our brief at page A1595 to 1596, Apple's expert. Well, he's – HLS, Apple's HLS system, HDTV live system, collects, I believe, it's two or three buffers worth or segments of data in the client before it plays. So that adds, depending upon how large those segments are, between 15 and 30 seconds worth of latency. So they testified. That was their witness testifying to that. Secondly, Your Honor asked for sides to the spec. Those sides to the spec, I think, make abundantly clear that the only thing we're talking about here is transmission at best to the client device, not what happens inside. Remember, these sections – look, for example, at Specification 8. What's so frustrating here, this is exactly our system, what they're doing, exactly what we're doing. They say here that in column 8 it says identify at what time to begin, preferably with minimal lag, and then reads the index file to identify what time and start receiving the data in the stream substantially in real time. It's the receipt of the data at the client device. The other point he pointed to is where you're measuring the timestamps. Users don't measure timestamps. I don't measure a timestamp when I'm watching my device. The client device is what automatically checks the timestamp, and if it's not receiving the data fast enough, it will ask for a different bit rate stream, and it will do this adaptive bit rate adjustment that's discussed in the briefs. But there's nothing, nothing in the patent, the claims, or the judge's construction that says that what happens after once it's received at the client device avoids the claim limitation of real time broadcasting. That's just not in the claim. It's not in the construction. That's why we didn't appeal that construction. There's nothing that talks about it. The construction talks about the simultaneous transmission to the client. It doesn't say the client has to actually do any specific thing once it receives it, let alone play it back or play it back with this amount of latency or that amount. It's silent. So in your view, a system that transmits in real time but builds in a half hour time lag to the actual viewer would still infringe? That's because I'm not accusing what's going on inside the device. It would be real time broadcasting. It would be real time to the client device. The fact that the client chooses not to view it in real time is a client choice, but that's not what the patent's directed to. I see my time is up. Okay. I thank both counsel for their argument. The case is taken under submission. Our next case for today. Thank you, Your Honor. It's 2-0.